It pleased the Court, Linnea Johnson for Lonnie Shoulders Petitioner and Appellant, Central California Appellate Program. I would reserve two minutes for rebuttal, and I will keep my eye on the time. This is an AEDPA case. Distilled to its essence, the State Appellate Court adjudicated a claim of ineffective assistance of counsel on direct appeal. In so doing, it found counsel was ineffectiveness was not prejudicial. The State Appellate Court made an unreasonable determination of fact, based on the record before it, in the context of assessing whether trial counsel's mistake was prejudicial. Is this a fact? I believe it is a fact, and here's why. The State Appellate Court opinion does not in the State Appellate Court opinion does not take the facts of the testimony of Brian  The State Appellate Court opinion was not prejudicial. If the State Appellate Court had utilized California rule of court 8.324 to have it transmitted to it, or if the parties had done that, it would have recited that as well. Secondly, in the recounting of the facts in the opinion, it is pretty clear that it is telling those facts through the testimony of Brian and Nidman, the State Security, the store security officers. And what's very important to understand is that those two gentlemen did not, were not percipient witnesses to this theft. They made a videotape. They were percipient witnesses to the making of the videotape, but they saw nothing more than what the videotape showed. So the best evidence was the videotape. The best evidence was shown to the jury. The prosecutor minimized that best evidence, saying it was surplus and that the jury should really listen to what Brian and Nidman had to say. Now, the State Appellate Court opinion was not prejudicial. It was not prejudiced. And I believe they were successful in convincing the jury to do exactly that for two reasons. First of all, when the Booz's error occurred here and the jury was instructed pursuant to the stipulation, which was actually antithetical to Booz's, that Mr. Petty, what we normally refer to as petty theft with a prior, the finder fact must find that there was a taking and carrying away the property of another with the intent to permanently deprive. In addition, there must be a showing that the defendant had a prior theft conviction and that he had actually done time for it. Now, the California Supreme Court in Booz's said those are sentencing factors. If you're willing to stipulate, if any defendant is willing to stipulate. Counsel, can I interrupt you briefly? Yes. You're getting in now to the error committed by counsel. Let's back up a little bit. What is the mistake that the State Court made? The State Court found that the evidence of Bryant and Nidman was uncontroverted and it did so without looking at the videotape. The videotape formed the complete background. Now, did Mr. Shoulders make the videotape part of the record of his appeal? On direct appeal? Under California rule of court 8.340E, subdivision E, the exhibits from trial are deemed to be part of the record on appeal. Is that enough to get them before the reviewing court? It is enough for them legally to be before the viewing court. It doesn't logistically get them before the reviewing court. Is the reviewing court required to review any exhibit that is not made part of the record by the parties? This is a quirky issue of California procedure. But the rule makes, the rule deems every exhibit to be part of the record on appeal. But obviously the court of appeal does not want to be inundated with every exhibit and every appeal that it hears. So there is a hybrid kind of procedure. And that hybrid procedure is that either party or the court can file a notice to transmit the exhibit. All right. Well, the court didn't do it here and neither did any of the parties. The court didn't do it and neither did any of the parties. Do you have any California case that says that that's error on the part of the reviewing court? I don't have a case that says it's error on the part of the reviewing court to do so, but I do have case law, which has been cited in the reply brief, that indicates that it is unnecessary to request judicial notice or to move to augment with an exhibit because it is under the rule deemed part of the record. I mean, what we're ultimately looking at here, it's an interesting problem, as to what degree California procedural law prevails when what we are looking at is essentially a constitutionally based harmless error determination. Correct. Which has to rely upon a determination of whether the jury would have done the same thing otherwise, which it seems hard to do without looking at what the jury actually saw. So I don't know whether – is there any case law about whether they, for that purpose, the actual record as opposed to the way in which the parties stipulate or get it before the court logistically governs? There is no authority that I have been able to find. So it is in that sense, I think, a question of first impression. But Strickland makes it very, very clear that the State appellate court is supposed to look at all the evidence to see how the error affected that evidence. Go ahead. Counsel, I have a slightly different question. The issue before the California Court of Appeal was the question of the ineffective assistance of trial counsel. Correct. I assume that Mr. Shoulders had different counsel on appeal. He did. And that counsel – was that you? No, it was not. And that counsel failed to put the video in the record that was transmitted to the court. That's correct. It was available to the court, but he failed to put it in there. Correct. Have you alleged ineffective assistance of appellate counsel as well here? That has not been alleged for reasons I can't reveal but of attorney-client privilege. Isn't that really our problem here, that you've got – that your appellate counsel failed to put the video in the record? I don't think it is for a couple reasons. If the court had no means available to it to get that exhibit before it, I think you would have a point. But the court can order it up on its own motion, and it has done so on numerous occasions. Can I ask a different question? The statement is that the facts of the defendant taking the disk, concealing it as a person, purchasing two other disks, and then putting it in the Kale sale were undisputed. Now, isn't that true independently of the video? I mean, I looked at the video, and I don't see him doing that, but my eyes, I guess, maybe aren't good enough. But he did say that. And the fact that he's – my understanding is that in his jail interview, he said essentially that, and that that was admitted independently. Am I wrong about that? Mr. Shoulders, there are really two possible facts supporting the petty theft here. One is that he removes the CD from the disk, from the shelf. He turns his back to the camera. He inserts it in his waistband. And at that point, he said he admitted doing that, and he said he intended to. I do note, I've looked at this video, as you well imagine, probably many, many, many times. And it appears to me he doesn't have any pockets in his shorts, and he's carrying his wallet the entire time. He's certainly walking with his elbows close to his waist in a bit of an unnatural position. Because he's holding his wallet in front of him. Yeah. It could be because he's also got something under his shirt. It could be. It could be. But the point is, for that act, he says he intended to pay for it, but he admits he didn't. But then when that evidence comes before the jury, the prosecutor sort of shifts ground here and says, well, regardless of what his intention was then, he pulled it out and he stuck it in his he pulled it out of his waistband, he stuck it in his bag, and he walked out the store, and so he certainly intended it there. Well, this is the $64,000 question. Does the video show him removing it from his waistband and sticking it in the bag? Well. But the video does show that he put two CDs on the counter. That's correct. Not three. And that he had three when he got outside. That's correct. But what you see in the video is then you see him leaving the cashier's counter. There's a jump as they change cameras. We don't know how long a duration that is. And then you see him going pie a series of end caps. What does that mean? End caps. They're the displays they put at the end of an aisle. So your view of him is obscured. So Mr. Shoulders never admitted he took it out of his waistband and put it in the bag. Well, whether he did that or not, the video is clear in showing that he presented two CDs to the clerk, paid for two, two were put in the bag. And then he left. And when he was apprehended outside the store, there were three CDs in the bag. But Brian. What other. Brian. Isn't it logical? I mean, what other conclusion can you reach but that he put a third one in the bag after he paid for two? Well, Brian and Inman testified that on the video they saw him do that. So whether they saw him or not. But that's the evidence the jury relied on. How do you know that? Why do you say the jury couldn't simply conclude that he put the third one in the bag because there were only two when he left? One of the reasons the jury reached that conclusion, I believe. Couldn't they have reached the conclusion just based on that? They could have. They could have. But that meant the case was a circumstantial evidence case and not a direct evidence case. It was a direct evidence case if you believe Brian and Inman that they saw him do this. But the larger fact is, I mean, you're assuming that when the state court of appeals and you're over your time now, so I'll stop you after this, said the facts that they said were undisputed, once again, were taking the disc, concealing it on his person, purchasing two other discs, and then putting the concealed disc in his bag. Now, one, two, and three he did say in his interview. Correct. And four is just evidence by the fact that he had the disc in his bag. But, you know, it doesn't, it doesn't. They're not specifically relying on the testimony of the officers in doing that. Well, they've said it's uncontroverted. And to me, the videotape, because it doesn't show it when they said it did, is controverted. Moreover, I think. Where did they say it did? Pardon? Where did they say that the videotape showed it? If I can look for that, Your Honor, I'll bring it up in rebuttal. Okay. Thank you very much. Well, the jury had the videotape, didn't they? Pardon me? The jury had the videotape, didn't they? The jury had the videotape. So they could decide whether or not these two men were correct or not. But the prosecutor said the videotape is surplus. Listen to Bryant and Nindman. And the record shows.  That they didn't look at it a second time. And, Your Honor, I don't think that's true. Your Honor, if you have looked at that videotape, you know you would have to look at it many, many, many times to try and see what they say was there. Well, the jury could look at it as many times as they wanted. But it didn't because it looked at everything through the lens of propensity created by that bouzazaire. This guy was a thief. We know he's a thief. We've got these two security officers telling us they saw him do it. Why look at the video? Why run it ten times backwards and forwards? We don't have to. We can rely on it. We can rely on it very much. May it please the Court. Justin Riley on behalf of the Warden. Appellant's argument seems to be focusing on an unreasonable determination of the facts. And as this Court has mentioned, this was an interesting argument on what the term present means in terms of 2254 section D-2. Well, it doesn't matter. It could be if it's not D-2, it's D-1. What difference does it make? It would have to be D-1 through clearly established Supreme Court precedent. And clearly established Supreme Court precedent does not impose a constitutional duty on a reviewing court, a reviewing State court to go out and look for evidence. That's not – you know, we have this problem all the time in this Court. That is, the trial courts do not transmit and sometimes return to the parties the exhibits. And we certainly regard those as part of the record. And if we need them, we get them. I don't really understand the argument. I mean, it's in the record of the trial court, and it's up to the court of appeals to decide what it needs to carry out its duties. And if it carries out its – if what it needs to carry out its duty is to look at what the jury saw, then it has a responsibility to do it. Absolutely. And in State court, as Appellant has suggested through citations to the California Rules of Court, record for ADPA purposes might not be the same record in terms of the California Rules of Court. Here's why. The California Rule of Court 8.320E, as Appellant has suggested, states that exhibits at trial are part of the appellate record only – and I'm quoting – only, but may be transmitted only according to – and they cite another rule. It's California Rule of Court 8.224A. What 8.224A – Are you conceding by making this argument that, in fact, the court of appeals' conclusion of harmlessness depended upon their assumptions about a video they hadn't seen, or is it – I mean, it's not at all clear to me that the video was really the key issue at all. It wasn't. And I have a citation to the record at – excerpts of record tab 16, which is the reporter's transcript at page 71. The prosecutor specifically asks the first loss prevention specialist – I believe Bryant is his name – how many CDs were on the receipt? Answer, two. How many CDs were in the bag? Answer, three. It doesn't matter what the tape showed. When Bryant ran out to catch appellant in the sidewalk there in front of the store, there were three CDs in that bag. If in fact the – Mr. Shoulders had taken the CD not from the CD rack where he was looking at the other two, but from an end cap as he walked out from the cashier, does that change anything? It does not. It doesn't matter – under California law, it doesn't matter – it doesn't matter where inside the store appellant forms the intent to steal. If the appellant formed the intent to steal outside of the store and grabbed it out of his waistband and put it in his bag, the very next step he took away from the store is theft. So I agree. I looked at the DVD. I could see my eyes aren't that great either. But the uncontested evidence is that there were two CDs in the bag when the clerk rung him up and there were three CDs in the bag when the loss prevention officer stopped him. The fact that the DVD didn't show appellant actually placing that DVD into the bag is irrelevant. It is true, though, and this is what's disturbing, is that the Court of Appeals account in the factual section simply credits what the – what Bryant and Nenman said they saw on the videotape. What's those as the facts? Part of that was that defendant or appellant presented no evidence at trial. I'm sure that's a large part of the reason why the appellate court said that the facts were uncontested. But the videotape didn't contest what Bryant and Nenman saw. They interpreted what they saw as the jury was watching along, is my understanding, from reading the transcript. So they, in essence, were uncontested. The two statements that – or three – maybe three statements that were made before the – that Childress made before the trial, I guess two at the time that he was arrested and one in a jail, were all admitted, right? Absolutely. Right. And so at least the second one does conform with the story that's told up to the point of taking out the compassionate addition and putting it in the bag. Yes. He admitted he put it on his person, and then there was testimony that the third CD was found in the bag, which was uncontested at trial. So, yes. Counsel, this question occurred to me as I was reflecting on the evidence. Did the two security officers – were they reviewing a videotape when these circumstances developed, or were they actually watching a live video screen from which a tape was being made? They were watching a live video screen. The quality of what they saw on the video screen may have been different from the tape that was being made at the same time. I completely agree, and I was ready to make that argument to the court, but obviously that isn't in the record. But, yes, digitally, every time you – It may not have been the best evidence. What they saw may have been different. No, and frankly, these loss prevention experts are watching the screen every day. They're in their own environment. They know what's going on. They can see things that we can't. They know the layout. They know the screens, that sort of thing. I thought it was relatively – either conceded or uncontested on the record that they were both the same. I'm sorry. That they were the same, that is that what they saw and what the videotapes showed was the same. I don't think it was discussed all that much at trial other than were you watching a screen? Yes. They weren't watching a tape. They were watching it happen on a screen. But there was no evidence that what they saw was better or more distinct or anything else. That's true. That's why I wasn't going to get into that. I'd love to answer any other questions. Okay. Thank you very much. We'll give you a couple minutes to rebuttal. And I would be – I mean, this is what I'm seeing in the Court of Appeals opinion with regard to the question I asked you. The facts, as spun out in the facts section, seem to take what Bryant and Nindman saw on the tape as what happened. But when they get to the harmless error discussion, as far as I can tell, the actual facts that they say were undisputed were undisputed. I mean, the only part that you could quibble about is the last, putting the concealed disc in his bag. But you can say that that's undisputed in the sense that they were, in fact, in his bag, so they must have gotten there. Okay. Here's the reference in the record, and I think it will respond to that as well. From here, it's a far-on view, the camera view. You can see out really well. He puts his hands like this in his pants, pulls it out, and puts something in the bag and then exits the store. This is in the record, but it's not in the Court of Appeals. This is in the record, tab 16, page 58. So... The point is that if they were reading the record, they would have thought it was clear, but if they looked at the tape, they wouldn't have thought it was clear. Exactly. Exactly. There were two additional matters I wanted to point out. These security employees of the ShopCo store are not experts. They were not proffered as experts at trial. They were proffered as percipient witnesses to the making of the tape. Second, this Court should consider the fact that the State Appellate Court did reach the IAC claim on direct appeal. They often don't. And the reason they don't is because the record isn't adequate to adjudicate the claim on appeal. And when they do that, they deny the claim without prejudice to filing a habeas writ to include the matter that's outside the record. The Court didn't do that here. The Court went ahead and adjudicated the IAC claim in the direct appeal without an adequate record and took no action to make the record adequate, which it had a complete ability to do. Okay. Thank you very much. And thank you both for your arguments. Shelters v. Walker. The case is submitted. I'm going to go on to Vela v. Century National Insurance Company. And I'd like to ask the Courtroom Deputy, when I say how much time I'm giving him on rebuttal, put that on the – because I watched that. So if you run it from what was there before, it confuses me. Okay? Thank you. All right. Vela v. Century National Insurance. Thank you.
judges: Graham, Berzon, Bybee